**Affirmed and Memorandum Opinion filed June 4, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00094-CV

## IN THE INTEREST OF J.J.G AND D.J.T-B., CHILDREN

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-00163J**

## M E M O R A N D U M   O P I N I O N

I.M.G. ("Mother") appeals the trial court's final decree terminating her parental rights, and appointing the Department of Family and Protective Services (the "Department") as sole managing conservator of J.J.G. ("Jane") and D.J.T.-B. ("David").[1] In two issues the Mother challenges the sufficiency of the evidence to support the trial court's finding (1) under section 161.001(E) of the Texas Family Code, and (2) that termination of her rights would be in the best interest of the

---

[1] Pursuant to Texas Rule of Appellate Procedure 9.8, we will use fictitious names to refer to the children.

children. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On November 27, 2013, the Department received a referral alleging physical abuse and neglectful supervision of David by his father.[2] At the time David was 11 weeks old and presented to the hospital emergency room lethargic and not responding normally. David's grandmother was with him on arrival. Test results revealed an acute bilateral bleeding of the brain and a chronic brain bleed. David's mother and father arrived at the emergency room three hours later.

The Department sought to be named temporary managing conservator of David and his sister Jane based on: (1) David's father's confession that he had shaken David; (2) the parents' positive drug tests for marijuana; (3) the parents' inability to provide a safe and stable environment for the children; and (4) hospital reports of "old blood." Both children were removed from the home on January 10, 2014.

On January 13, 2014, the Department filed its original petition for termination of the parents' rights. On February 14, 2014, the Department filed Family Service Plans for David's parents. The Mother's service plan required her to:

- maintain stable employment and provide proof of employment to the caseworker upon request;
- maintain stable housing that is drug free and void of any safety hazards;
- report any changes or relocation of residence within 48 hours to the caseworker;
- complete a psycho-social evaluation through the Children's

---

[2] David and Jane have different fathers. Jane's father executed an affidavit waiving legal interest in Jane; David's father has not appealed the termination of his parental rights.

Crisis Care Center (4C's);

- submit to random drug testing;

- attend individual counseling to understand how her behaviors affect her children;

- attend Parenting Skills classes to improve her abilities to provide safety for her child; and

- submit to drug and alcohol assessment to determine her dependency.

On December 18, 2014, the trial court held a bench trial on the termination of the parents' rights. At that time the father was incarcerated for the injury to David. Prior to hearing testimony, the trial court admitted into evidence the birth certificates of the children, the indictment of the father for injury to a child, copies of the Mother's positive drug tests for benzoylecgonine, cocaine, marijuana, and marijuana metabolite, and copies of the Family Service Plans.

The caseworker, Dominique Young, testified that David came into the Department's care because he was presented at the emergency room at 11 weeks old, lethargic, and not responding normally. The father called the grandmother and reported the baby's condition. The grandmother reported that paramedics performed CPR to which David responded. During the hospital evaluation it was discovered that the father smoked crack cocaine in the house, and that David had a visible bump on the right side of his head. A CT scan showed acute bilateral cerebral bleeding of the brain and a chronic brain bleed. Jane, David's older sister, came into care because of the injuries to David. The father confessed to shaking David.

Both children are currently placed in a foster home with a foster mother who is willing to adopt them. David will need speech therapy and physical therapy as a result of the damage caused by Shaken Baby Syndrome.

Young reviewed the Family Service Plan with the Mother and held bi-monthly conferences with her to discuss services and any referrals the Mother needed. The Mother failed to provide documentation of stable employment, or a lease agreement evidencing stable housing. The Mother completed a psychosocial evaluation, participated in individual counseling, and completed a substance abuse assessment. The Mother failed to attend parenting classes or submit to all of the required random drug tests. The Mother was required to submit to drug testing approximately twice per month for ten months. She submitted to three drug tests, which were all positive. The Department was unable to maintain contact with the Mother to arrange visitation with the children because she did not maintain a consistent phone number.

The Mother was living in the grandmother's home. The Mother initially asked that the children be placed with the grandmother. The Department rejected this request because the grandmother had been previously convicted of child endangerment. The Mother then asked that the children be placed with her sister. As of the time of trial, the Department had been unable to contact the sister, because she had not returned Young's calls.

Young testified that both children have bonded with the foster family, but also have an attachment to the Mother. She testified that termination was in the children's best interest because the foster home provides a safe and stable environment, the Mother has tested positive for drugs each time she submitted to testing, and has been inconsistent in her dealings with the Department. Young does not believe the Mother can provide a safe and stable environment for the children.

The Mother testified and admitted she failed to complete her Family Service Plan and failed her drug tests. She testified that she last used drugs 26 days before trial. She usually uses marijuana, but is trying to get sober. The Mother testified

4

that she has trained to become a dental assistant, and should be employable after serving a four-month externship. In the meantime, she has worked part-time at a fast-food restaurant. The Mother testified that if the Department were willing to extend the case and not terminate her rights, she would be willing to attend residential or outpatient treatment for addiction.

A representative from Child Advocates testified that Child Advocates was very concerned that the Mother could not provide a stable home.[3] The foster home is able to provide a safe, stable environment, and Jane has bonded with the foster mother.

At the conclusion of the trial, the trial court terminated David's parents' rights and the Mother's parental rights to Jane. The trial court accepted Jane's father's affidavit of waiver of interest. The Mother appeals the termination of her parental rights to both children.

## II.    ANALYSIS

In her first issue the Mother argues the evidence was legally and factually insufficient to support the trial court's finding under section 161.001(1)(E) of the Texas Family Code. Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the children. Tex. Fam. Code Ann. § 161.001(1), (2) (West 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no

---

[3] The reporter's record does not identify the Child Advocates representative by name.

pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 336. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so

significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

### A. Predicate Termination Findings

The trial court made predicate termination findings that the Mother had committed acts establishing the grounds set out in subsections (E) and (O) of section 161.001(1), which provide that termination of parental rights is warranted if the fact finder finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has:

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [or]
>
> * * * * *
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

Tex. Fam. Code Ann. § 161.001(1)(E), (O).

The Mother concedes that sufficient evidence supports the predicate termination finding under section 161.001(1)(O). Unchallenged predicate findings are binding on the appellate court. *See In re E.A.F.,* 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

7

The Mother, however, asks this court to review the legal and factual sufficiency of the evidence to support the trial court's finding under subsection (E) because of the collateral consequences that accompany such a finding. Those consequences include the binding nature of predicate findings on the best interest determination, and the potential for a subsection (E) finding to support a later termination under subsection (M).[4]

"Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In this context, endanger means "to expose to loss or injury; to jeopardize." *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d at 477.

Termination under subsection 161.001(1)(E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re T.N.*, 180 S.W.3d at 383; *see also In re*

---

[4] Under section 161.001(M) of the Texas Family Code, a parent-child relationship may be terminated with respect to another child based on a finding that the parent's previous conduct was in violation of subsection (D) or (E) or substantially equivalent provisions of the law of another state.

*J.O.A.*, 283 S.W.3d at 336 (holding that endangering conduct is not limited to actions directed toward the child). Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth. *Id.* ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs*., 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re J.O.A.*, 283 S.W.3d at 345. Furthermore, "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *Id*.; *see also In re T.N.*, 180 S.W.3d at 383 ("A parent's engaging in illegal drug activity after agreeing not to do so in a service plan for reunification with her children is sufficient to establish clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children.").

Illegal drug use may support termination under subsection 161.001(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. This court has also held that a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *In re A.H.A.*, No. 14-12-00022-CV; 2012 WL 1474414 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.).

The children in this case came into the care of the Department because

David suffered injuries as a result of Shaken Baby Syndrome and presented to the emergency room lethargic and not responding normally. David was diagnosed with acute and old brain bleeds. Both parents admitted smoking marijuana on a daily basis. Neither parent called 911 when David was not responsive, and did not arrive at the emergency room until three hours after his admission to the hospital.

The Mother testified that she was trying to maintain sobriety, but the caseworker testified that the Mother was not attending counseling sessions in an attempt at sobriety. The Mother also testified positive for cocaine, but alleges that was because someone "laced her marijuana." The Mother further testified that she continued to smoke marijuana while the termination case was pending because she did not understand the seriousness of the case.

The Mother admits that her drug use can qualify as a "voluntary deliberate, and conscious course of conduct endangering the child[ren]'s well-being." (quoting *In re C.A.B.*, 289 S.W.3d at 885). She argues, however that "the record does not provide any context as to how appellant's use of marijuana exposed her children to danger." The Mother also argues that this court should consider the use of marijuana in a different context from other illegal drugs because other states have legalized the use of marijuana. As noted earlier, a parent's chronic drug use exposes the child to the danger that its parent may be impaired or imprisoned. At this time marijuana remains an illegal drug in Texas. The fact that other states have legalized marijuana does not affect a parent's potential for impairment or imprisonment in this state.

Reviewing the evidence under the appropriate standards, we conclude that the trial court could have formed a firm belief or conviction that termination of the Mother's parental rights is warranted under section 161.001(1)(E). We overrule the Mother's first issue.

## B.    Best Interest of the Children

In her second issue the Mother challenges the factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the children. The Mother concedes the evidence is legally sufficient to support the best interest finding. A strong presumption exists that the best interest of the child is served by keeping the child with its natural parent, and the burden is on the Department to rebut that presumption. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The unchallenged predicate finding under section 161.001(O) can support the court's best interest finding. *See In re C.H.,* 89 S.W.3d at 28. Evidence supporting termination under section 161.001(1)(E) also supports a finding that termination is in the best interest of the children. *See id.* ("While it is true that proof of acts or omissions under section 161.001(1) does not relieve the petitioner from proving the best interest of the child, the same evidence may be probative of both issues.").

The factors the trier of fact may use to determine the best interest of the children include: (1) the desires of the children; (2) the present and future physical and emotional needs of the children; (3) the present and future emotional and physical danger to the children; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the children; (6) the plans for the children by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (West 2014) (listing factors to consider in evaluating parents' willingness and ability to provide the

11

child with a safe environment).

There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

The Mother contends that the presumption in her favor is not rebutted because there was no evidence that she used drugs in the children's presence, she has no prior history with the Department, or criminal history, and she was not present when David was injured. We review the applicable *Holley* factors below.

## 1. Needs of and Danger to the Children

With regard to the present and future emotional and physical needs of the children and the present and future emotional and physical danger to the children, both parents admitted chronic marijuana use. The Mother is currently living with the children's grandmother who has a prior conviction for child endangerment. A parent's drug use supports a finding that termination is in the best interest of the children. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).

## 2. Stability and Compliance with Services

The Mother conceded that sufficient evidence exists to support termination under section 161.001(1)(O), which addresses compliance with the Family Service Plan. In determining the best interest of the children in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the children. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) ("Many of the reasons supporting

termination under subsection O also support the trial court's best interest finding.").

In this case, the Mother did not comply with random drug testing, parenting classes, or treatment for addiction. Her reason for failure to comply with drug testing is that she cannot be reached on a regular basis. The Mother did not provide proof of employment or stable housing. Her failure to comply with court-ordered tasks, drug use during the termination proceedings, and failure to provide a safe and stable environment support the trial court's finding that termination is in the best interest of the children.

### 3.      Child's Desires and Proposed Placement

David was an infant and Jane was less than five years old at the time of trial. Neither child was able to express his or her desires. When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster family, are well cared for by them, and have spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the children's best interest. *See In re J.N.R.*, 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Children's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the children is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d at 28. In this case, the caseworker testified that Jane has lived with the foster family for almost a year, has bonded with them, and called her

foster mother, "Mom."

### 4. Parenting Abilities and Family Support

We may also consider the Mother's past performance as a parent in evaluating her ability to provide for the children and the trial court's determination that termination of her parental rights would be in the children's best interest. *See In re C.H.*, 89 S.W.3d at 28. The record contains evidence supporting the best interest finding based on the Mother's drug use, lack of stable employment, and failure to comply with court-ordered services. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family service plan in holding the evidence supported the best interest finding). The Mother's primary family support is the grandmother who was previously convicted of child endangerment.

Based on the evidence presented, the trial court could have reasonably formed a firm belief or conviction that terminating the Mother's parental rights was in the children's best interest so that they could promptly achieve permanency through adoption by the foster family. *See In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Applying the applicable *Holley* factors to the evidence, we conclude that factually sufficient evidence supports the trial court's finding that termination of the Mother's parental rights was in the best interest of the children. We overrule the Mother's second issue.

We affirm the trial court's judgment.

/s/     Sharon McCally
                   Justice

Panel consists of Justices Boyce, McCally, and Donovan.